UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Orlando Gordon,

    Petitioner,

v.                                                  Criminal Case No. 11-20752
                                                 Civil Case No. 14-10912

United States of America,

                                                 Honorable Sean F. Cox
    Respondent.                              United States District Judge
_____/

## OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C § 2255 (Doc. #494)

On March 25, 2013, Petitioner pleaded guilty to Conspiracy to Possess With Intent to Distribute and to Distribute Marijuana, Cocaine, and Cocaine Base and Structuring a Currency Transaction. On September 13, 2013, this Court sentenced Petitioner to 190 months' imprisonment as to Count One, and 60 months' imprisonment on Count Two, to run concurrently. (Sentencing Trans., Doc. #501). Judgment was entered on September 27, 2013. (Judgment, Doc. #450).

The matter is now before the Court on Petitioner's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. (Doc. #494). The Government has filed a Response to Petitioner's motion. (Doc. #526). For the reasons set forth below, the Court declines to hold an evidentiary hearing, and DENIES Petitioner's Motion to Vacate Sentence.

### BACKGROUND

The background facts are largely undisputed. On December 8, 2011, Petitioner, along with 14 co-defendants, was indicted on several drug-related charges. (Indictment, Doc. #1).

On March 25, 2013, Petitioner pleaded guilty to Counts One and Two of the Fifth

1

Superceding Information, which charged Conspiracy to Possess With Intent to Distribute and to Distribute Marijuana, Cocaine, and Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) & 846 (Count One), and Structuring a Currency Transaction in violation of 31 U.S.C. § 5324(a)(3) (Count Two). (Fifth Superceding Information, Doc. #346).

Petitioner admitted that, between 2008 and May 2012, he and his co-defendants agreed that Petitioner would supply them with large quantities of marijuana and cocaine for further distribution. (Rule 11 Plea Agreement, Doc. #355 at 3). Furthermore, on June 8, 2007, Petitioner admitted that he had another person purchase several money orders made payable to him that were ultimately deposited in his bank account. (Doc. #355 at 3). Petitioner organized this transaction for the purpose of evading the financial institutions' federal reporting requirements. (*Id.*).

Attached to the Rule 11 Plea Agreement are several worksheets that were used by the parties to calculate Petitioner's sentencing guideline range. (Rule 11 Plea Agreement, Doc. #355 at 11–19). Worksheet A section 2, entitled "Adjustments (U.S.S.G. ch. 3, pts. A, B, C)," states that Petitioner's base offense level would receive a four level increase pursuant to §3B1.1(a) because Petitioner was a "Leader/organizer in activity w/ five-plus participants."

Petitioner reviewed the Rule 11 Plea Agreement and the attached worksheets with his attorney before he signed it. At the Plea Hearing, Petitioner was placed under oath, and he and the Court engaged in the following colloquy:

> The Court: Sir, have you heard the charges that have been made against you?
>
> Defendant Gordon: Yes.
>
> The Court: And have you discussed the charges, as well as the sentencing consequences of these charges with Mr. Royal?

| | |
|---|---|
| Defendant Gordon: | Yes. |
| The Court: | Do you have any questions at all regarding the charges, as well as the sentencing consequences of these charges? |
| Defendant Gordon: | No, Your Honor. |

. . . .

| | |
|---|---|
| The Court: | Before you signed [the Rule 11 Plea Agreement], did you read the document as well as the attached worksheets which are worksheets A, B, C, which consists of two pages, D, as well as worksheet E, which consists of three pages? |
| Defendant Gordon: | Yes, Your Honor. |
| The Court: | All right. Before you signed the document, did you review the document as well as the attached worksheets with Mr. Royal? |
| Defendant Gordon: | Yes, I did Your, [sic] Honor. |
| The Court: | And before you signed the document, did Mr. Royal answer each and every question that you had regarding anything contained in the Rule 11 Agreement, as well as the attached worksheets? |
| Defendant Gordon: | Yes, he did, Your Honor. |
| The Court: | Do you have any questions at all regarding anything contained in the Rule 11 Agreement, as well as the attached worksheets? |
| Defendant Gordon: | No, Your Honor. |
| The Court: | Okay. Has Mr. Royal answered each and every question that you've had regarding your case? |
| Defendant Gordon: | Yes, Your Honor. |
| The Court: | Are you satisfied with the advice and service that Mr. Royal has provided to you in your case? |
| Defendant Gordon: | Yes, Your Honor. |

. . . .

(Plea Hearing Trans., Doc. #403 at pp. 6–8). Petitioner was aware that his stipulated guidelines range allowed for a sentence of up to 190 months' incarceration, as evidenced by the following discussion that also took place at the plea hearing:

| | |
|---|---|
| The Court: | Okay. Now, could you drop down to page four, paragraph 2(b)? |
| Defendant Gordon: | Yes. |
| The Court: | Do you see where - - let me step back. Do you see where it reads, "defendant's guideline range is 168 to 210 months in prison"? |
| Defendant Gordon: | Yes, sir. |
| The Court: | Okay. Now, of course the guidelines are advisory. However, has Mr. Royal explained to you the significance of guidelines in sentencing? |
| Defendant Gordon: | Yes, sir. |
| The Court: | Could you please turn to page five, paragraph 3(a), imprisonment? Do you see where it reads, "Pursuant to federal rule of civil procedure 1(c)(1)(C), the sentence of imprisonment in this case may not exceed 190 months. The Court must, however, sentence you to at least ten years in prison." Do you see that? |
| Defendant Gordon: | Yes, Your Honor. |
| The Court: | Any questions? |
| Defendant Gordon: | No. |

. . . .

(Plea Hearing Trans., Doc. #403 at pp. 12–13). Petitioner also stated on the record, under oath, that he had not been promised anything in exchange for his guilty plea, nor had he been pressured to

4

plead guilty:

| | |
|---|---|
| The Court: | Now, Mr. Gordon, apart from what is contained in the Rule 11 Agreement, which we just reviewed, have you been promised anything by this Court, which would be me, the Judge, the attorney for the government, which would be Mr. Cares, or your attorney, Mr. Royal, that you will be put on probation or receive any other specific sentence in return for pleading guilty to Counts One and Two this morning? |
| Defendant Gordon: | No, Your Honor. |
| . . . . | |
| The Court: | All right. Has anyone tried to force you to plead guilty by any mistreatment or pressure? |
| Defendant Gordon: | No, Your Honor. |
| The Court: | Are you pleading guilty freely and voluntarily because you are guilty and it is your choice to plead guilty to Count One and Count Two of the fifth superceding information? |
| Defendant Gordon: | Yes, Your Honor. |
| . . . . | |

(Plea Hearing Trans., Doc. #403 at pp. 8–15).

After the plea hearing, Petitioner's attorney, John Royal, filed a Motion to Withdraw as Trial Counsel on behalf of Orlando Gordon. (Mo. to Withdraw, Doc. #363).[1] On April 24, 2013, the

---

[1] In an affidavit attached to the Government's response to Petitioner's § 2255 motion, John Royal states:

> During the several months leading up to the Guilty Plea Hearing and the Revocation of Mr. Orlando Gordon's bond, I discussed with him on several occasions the substantial arrearage that had accrued in the amount he owed to me for attorney fees, because of the large number of hours which I was putting into representing him in this case. I also informed Mr. Orlando Gordon that, if he decided to go to trial, I would need his anticipated jury trial fees paid in advance. Further, I informed Mr. Gordon that unless these fees were paid, I would have to

Court issued an Order requiring John Royal to remain as co-counsel for Petitioner through sentencing. (Order, Doc. #393). At that time, the Court also appointed another attorney to represent Petitioner, and Martin J. Beres became Petitioner's co-counsel. (Order Appointing Federal Defender, Doc. #394; Notice of Appearance of Martin J. Beres, Doc. #397).

On September 13, 2013, this Court held a sentencing hearing as to Petitioner. (Sentencing Hearing Trans., Doc. #501). The Court imposed a 190 month sentence on Count One and a 60 month sentence on Count Two, to run concurrently. (Doc. #501 at 20). Other than an objection regarding Petitioner's prior criminal history, Petitioner made no objections to the Presentence Report or to the sentence imposed. At the end of the sentencing hearing, the Court orally granted John Royal's Motion to Withdraw as Counsel for Petitioner. (Sentencing Hearing Trans., Doc. #501 at 24).

Petitioner filed the instant Motion to Vacate Sentence on February 27, 2014 (Doc. #494). Petitioner argues that his sentence should be vacated, and a new sentence imposed because 1) his trial counsel was ineffective because he threatened to withdraw his representation if Petitioner did not plead guilty and deceived Petitioner regarding the terms of the plea deal, and 2) the Court violated Petitioner's rights under the Fifth and Sixth Amendment by finding that he was the

---

> withdraw from continuing to represent him, and he could go to trial with either another retained attorney, or with court-assigned counsel. Mr. Orlando Gordon kept telling me that he was trying to raise the money needed to keep me in the case . . .
>     At no time did I ever threaten Mr. Orlando Gordon that if he did not plead guilty, I would move to withdraw as his attorney . . . To the contrary, Mr. Gordon approached me and asked me to see what kind of a settlement agreement I could negotiate.

(Royal Aff., attached to Gvmt. Resp., Doc. #526 at Ex. 1 p. 5).

leader/organizer of the conspiracy for sentencing purposes. The Court ordered the Government to file a response (Doc. #497), which the Government filed on November 5, 2014 (Doc. #526).

## LEGAL STANDARD

Petitioner's motion is brought pursuant to 28 U.S.C. § 2255, which provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). The Court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) ("evidentiary hearings are not required when . . . the record conclusively shows that the petitioner is entitled to no relief.").

## ANALYSIS

**1)    Ineffective Assistance of Counsel**

7

Petitioner argues that he was denied effective assistance of trial counsel because 1) John Royal threatened to withdrawal from the case if Petitioner did not plead guilty, and 2) John Royal deceived Petitioner about the terms of the Plea Agreement, and erroneously informed Petitioner that he would receive a "capped sentence" of 10 years if he pleaded guilty. (Petr. Mo. at 5).

Ineffective assistance of counsel claims are governed by the familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to demonstrate ineffective assistance of counsel, a petitioner must show both that defense counsel's performance was deficient, and that petitioner suffered prejudice as a result. *Id.* at 687.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Indeed, it is permissible for a court to determine that prejudice cannot be established, and thus dispose of the claim without deciding whether counsel performed deficiently. *Id.* at 697 ("[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

The Sixth Amendment requires effective assistance of counsel at all critical stages of a criminal proceeding. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). "The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010), *citing Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

It is well accepted that "the decision to plead guilty first, last, and always rests with the

defendant, not his lawyer." *Smith v. U.S.*, 348 F.3d 545, 552 (6th Cir. 2003). However, an attorney is obligated to fully inform his or her client of all available options. *Smith*, 348 F.3d at 552-53. "A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Id.* The failure of defense counsel to "provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." *Smith*, 348 F.3d at 553, *quoting Moss v. United States,* 323 F.3d 445, 474 (6th Cir. 2003). In order to demonstrate prejudice, "the petitioner must show 'a reasonable probability' that 'counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *Briggs v. U.S.,* 187 Fed. App'x 540, 543 (6th Cir. 2006), *quoting Smith*, 348 F.3d at 551.

Petitioner argues that his trial counsel, John Royal, was deficient because he threatened that he would withdrawal from representing Petitioner unless he pleaded guilty. The Government responds that Petitioner's argument is directly contradicted by his trial counsel (via affidavit) as well as Petitioner's own statements at the plea hearing.

The Court finds that Petitioner's assertion is wholly unsupported by the evidence and records in this case. Pursuant to Criminal Rule 11, the Court engaged in an extensive plea colloquy with Petitioner at his plea hearing, where the Court specifically asked Petitioner whether "anyone tried to force [him] to plead guilty by any mistreatment or pressure[.]" (Plea Hearing Trans., Doc. #403 at 15). Petitioner responded, "No, Your Honor." (*Id.*). Petitioner's contention that his attorney pressured him into pleading guilty by threatening to withdrawal from representation belies his previous assertion, made under oath at the plea hearing, that he was not pressured into pleading

9

guilty. This Court went to great lengths to ensure both that Petitioner knew and understood all of the terms of the Rule 11 Plea Agreement, and that Petitioner voluntarily accepted the Plea Agreement's terms. Petitioner cannot now collaterally attack the plea agreement by contradicting his prior testimony. *See U.S. v. Green*, 388 F.3d 918, 923 (6th Cir. 2004) (rejecting argument that defendant's attorney and family coerced him into accepting plea offer where "the judge made a careful and searching inquiry to make sure the plea was entered voluntarily" at the plea hearing).

Petitioner also argues that his plea was not knowing and voluntary because his trial counsel "deceived" him about the terms of the plea agreement. Petitioner appears to claim that his trial counsel promised him that he would receive a capped sentence of 10 years if he pleaded guilty. The Government responds that "a defense attorney's incorrect estimation of 'the sentence that a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement.'" (Gvmt. Resp. at 7, quoting *U.S. v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990)).

The Court finds that Petitioner's claim that his attorney erred in predicting the sentence he would receive is not a basis to find that his plea was not knowing and voluntary. First, "a counsel's erroneous sentencing predictions generally are not grounds for ineffective assistance claims." *Schuett v. U.S.*, 2014 WL 5465447 (E.D. Mich. Oct. 28, 2014) (adopting Report and Recommendation) (citing *U.S. v. Hicks*, 4 F.3d 1358, 1363 n. 3 (6th Cir. 1993)); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("[A] mere inaccurate prediction, standing alone, would not constitute ineffective assistance . . . .").

Next, as with his first claim, Petitioner's assertion is directly contradicted by the record of the plea hearing. The Court specifically asked Petitioner whether his attorney promised him a specific sentence in exchange for his guilty plea; Petitioner responded, "No, Your Honor." (Plea

10

Hearing Trans. at pp. 14-15).

The Court further informed Petitioner that his minimum sentence was 10 years, the maximum sentence was life in prison, the guidelines range was 168-210 months, and the Plea Agreement permitted a sentence of up to 190 months. (Plea Hearing Trans. at 6-7, 12-13). Where a court correctly informs a defendant of his or her sentencing exposure before accepting a guilty plea, the plea should not be invalidated simply because defendant's attorney's made an erroneous prediction about sentencing outcomes. *Stephens*, 906 F.2d at 253 (disagreeing that defendant's guilty plea was not knowing and voluntary because he did not know his guideline sentencing range, where defendant had been "adequately informed of the consequences of his plea, even if the specific Guideline range was not known to him . . . ."); *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975) (citing *Holland v. United States*, 406 F.2d 213, 216 (5th Cir. 1969) ("A plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true.")); *see, e.g., Baker v. U.S.*, 781 F.2d 85, 88 (6th Cir. 1986) (upholding guilty plea where defendant claimed his attorney "threatened" him into pleading guilty with a 75 year sentence, because court itself properly informed defendant that the maximum sentence was 30 years of incarceration).

Additionally, Petitioner's trial counsel, John Royal, denies that he promised Petitioner that he would receive a 10 year "capped" sentence. (Royal Aff., Doc. #526 at Ex. 1 ¶ 11 ("At no time did I inform Mr. Gordon, or in any way lead him to believe, that this [Plea] Agreement required or made it likely that he would be sentenced to a term of no more than ten years in prison.")).

Based on the foregoing, the Court finds that the evidence and records conclusively show that Petitioner's plea was knowingly and voluntarily made, and that Petitioner's allegations of ineffective

11

assistance are without merit.

**2)      Violation of *Alleyne* and *Descamps***

Petitioner argues that this Court violated his constitutional rights when it imposed a four level enhancement to Petitioner's base offense level for Petitioner's role as a leader/organizer in the conspiracy. (Pet'r Mo. at p. 7.1). Petitioner argues that the Court engaged in impermissible judicial fact-finding, and that this runs afoul of *Descamps*[2] and *Alleyne*.[3] The Government responds that neither *Descamps* nor *Alleyne* apply in this case, and that the Court's scoring of the sentencing guidelines was proper.

The Court finds that Petitioner's reliance on *Descamps* is misplaced. The issue presented in *Descamps* concerned the manner by which a sentencing court could determine whether a defendant's prior convictions constitute the crimes enumerated under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *Descamps*, 133 S. Ct. at 2281-82. Specifically, the United States Supreme Court considered the instances in which a sentencing court could look beyond the elements of a criminal statute, i.e. to the charging documents and jury instructions, to determine if a defendant's prior conviction is a "violent felony or a serious drug offense" as defined by the ACCA. *Id.* Here, Petitioner was not charged under the ACCA, and *Descamps* does not otherwise limit this Court's ability to determine Petitioner's sentencing guidelines range.

In *Alleyne*, the United States Supreme Court considered the limits of permissible judicial fact-finding at sentencing. The defendants in *Alleyne* were charged with robbery affecting interstate

---

[2] *Descamps v. U.S.*, 133 S. Ct. 2276 (2013).

[3] *Alleyne v. U.S.*, 133 S. Ct. 2151 (2013).

12

commerce[4] and using or carrying a firearm in relation to a crime of violence.[5] The firearm charge carried different mandatory minimum sentences depending on whether or not the firearm was "brandished"—5 years for using or carrying the firearm, but 7 years if the firearm was "brandished." *Alleyne*, 133 S. Ct. at 2155–56.

The jury convicted defendants of the firearm charge, but did not indicate a finding that the firearm had been brandished. The presentence report recommended a 7 year mandatory minimum sentence based on a finding that the firearm had been brandished. The district court found that the evidence supported a finding of brandishing and sentenced Alleyne to 7 years imprisonment on the firearm charge. *Id.* at 2156.

The United States Supreme Court reversed. *Id.* at 2163–64. The Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime and must be submitted to a jury. *Alleyne*, 133 S. Ct. at 2155. However, the Court took care to note that its holding in *Alleyne* "does not mean that any fact that influences judicial discretion must be found by a jury." *Id.* at 2163.

On its face, *Alleyne* does not forbid the Court's finding that Petitioner was a leader and/or organizer of the conspiracy for guidelines calculation purposes. The 4 level enhancement under §3B1.1 used in calculating Petitioner's guidelines range did not increase the mandatory minimum sentence to which Petitioner was subject. Thus, it does not appear that the facts underlying this Court's application of the §3B1.1 enhancement were required to be found by a jury beyond a

---

[4] 18 U.S.C. § 1951(a)

[5] 18 U.S.C. 924(c)(1)(A).

13

reasonable doubt, per *Alleyne*.

More to the point, the Sixth Circuit has held that a district court does not violate a defendant's Sixth Amendment and due process rights by making factual findings regarding defendant's role in the offense in order to determine the proper sentencing guidelines range. *U.S. v. Sexton*, 512 F.3d 326, 329–30 (6th Cir. 2008) (upholding district court's fact-finding as to defendants' roles in the offense, where district court considered trial testimony and applied §3B1.1 enhancements); *see United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc) ("So long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range."); *United States v. Smith*, 749 F.3d 465, 487 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 307 (2015) ("both *Apprendi* and *Alleyne* took care not to disturb the district court's discretionary fact-finding in other circumstances.").

Based on the foregoing, the Court finds that Petitioner's Sixth Amendment and due process rights were not violated when the Court found that Petitioner was a leader and/or organizer of the drug conspiracy, and applied the §3B1.1 enhancement in determining Petitioner's sentencing guidelines range.

### 3)  **Evidentiary Hearing**

As previously discussed, this Court must hold an evidentiary hearing on Petitioner's § 2255 motion unless the evidence and record conclusively show that Petitioner is not entitled to relief. 28 U.S.C. § 2255(b). The Court concludes that the evidence and records on file show that there are no genuine issues of fact to be resolved, and that Petitioner is not entitled to relief. Moreover, the Court notes that Petitioner has not requested an evidentiary hearing. Therefore, the Court shall decline to

hold an evidentiary hearing in this matter.

## CONCLUSION

For the reasons set forth above, IT IS ORDERED that Petitioner's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 is DENIED.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2352(c)(2). Based on the above discussion, Petitioner has not made a substantial showing of the denial of a constitutional right. Petitioner's claims do not establish that "reasonable jurists would find the district's court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 528 US. 473, 484 (2000). Accordingly, IT IS ORDERED that a certificate of appealability is DENIED.

**IT IS SO ORDERED.**

Dated: April 13, 2015
                                       S/ Sean F. Cox
                                       Sean F. Cox
                                       U. S. District Judge

I hereby certify that on April 13, 2015, the foregoing document was served on counsel of record via electronic means and upon Orlando Gordon via First Class mail at the address below:

ORLANDO GORDON 46628-039
GILMER FEDERAL CORRECTIONAL INSTITUTION
INMATE MAIL/PARCELS
P.O. BOX 6000
GLENVILLE, WV 26351

                                       S/ J. McCoy
                                       Case Manager